UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANE AHMED, Derivatively on behalf of A123 Systems, Inc., <br><br> Plaintiff, <br><br> v. <br><br> DAVID P. VIEAU, DAVID PRYSTASH, JOHN GRANARA, DESH DESHPANDE, ARTHUR L. GOLDSTEIN, GARY E. HAROIAN, DR. PAUL E. JACOBS, MARK M. LITTLE PH. D., JEFF MCCARTHY, and DR. BART RILEY, <br><br> Defendants. <br><br> and <br><br> A123 SYSTEMS, INC., <br><br> Nominal Defendant. | Civil Action No. <br><br><br><br> **VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT** <br><br><br><br> <u>JURY TRIAL DEMAND</u> |

Plaintiff Jane Ahmed, by and through her attorneys, alleges the following upon information and belief, except as to those allegations concerning plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by A123 Systems, Inc. ("A123" or the "Company"), with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by A123; and (c) review of other publicly available information concerning A123.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction pursuant to 28 U.S.C. §1332(a)(2), because plaintiff and defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs. This action is not a collusive action designed to confer jurisdiction on a Court of the United States that it would not otherwise have.

2.      This Court has jurisdiction over each defendant because each defendant is either a corporation that conducts business in, and maintains operations in, this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

3.      Venue is proper in this Court under 28 U.S.C. §1391(a) because (1) one or more of defendants reside in, or maintain executive offices in, this district; (2) a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts described herein, occurred within this District; and (3) defendants have received substantial compensation in this District by conducting business herein and by engaging

in numerous activities that have an impact in this District.

## **PARTIES**

4.      Plaintiff Jane Ahmed, a citizen of the state of New York, is a shareholder of A123, was a shareholder of  A123 at the time of the wrongdoing alleged herein, and has been a shareholder of A123 continuously since that time.

.

5.      Nominal Defendant A123 is a Delaware corporation with its principal place of business situated at 200 WEST STREET, WALTHAM, MASSACHUSETTS.  The Company's common stock trades on the NASDAQ Global Market ("NASDAQ") under the symbol "AONE."   A123 is primarily involved in the lithium ion battery business, providing advanced battery technology at the cell, module and system level.

6.      Defendant David P. Vieau ("Vieau") has been the Company's Chief Executive Officer ("CEO"), President and a director on the Board of Directors ("Board") since March 2002. This Defendant may be personally served with process and citation at 47 MORRIS COVE RD, NEW HAVEN, CONNECTICUT 06512-4019.

7.      Defendant David Prystash ("Prystash") has been the Company's Chief Financial Officer ("CFO") since May 12, 2011. This Defendant may be personally served with process and citation at 47605 BELLAGIO DR UNIT 52, NORTHVILLE, MICHIGAN 48167-9801.

8.      Defendant John Granara ("Granara") served as the Company's Interim CFO between January 2011 and May 11, 2011 and has served as the Vice President of Finance and Corporate Controller since January 2010. This Defendant may be personally served with process and citation at 36 APACHE WAY, WILMINGTON, MASSACHUSETTS 01887-2691.

9.      Defendant Desh Deshpande ("Deshpande") served as the Chairman of the board of

directors of the Company at all relevant times.  This Defendant may be personally served with process and citation at 11 FAIRWAY DR., ANDOVER, MASSACHUSETTS 01810-4640, ESSEX COUNTY

10.    Defendant Arthur L. Goldstein ("Goldstein") served as a member of the board of directors of the Company at all relevant times.  This Defendant may be personally served with process and citation at 24 HUBBARD RD., WESTON, MASSACHUSETTS 02493-2266.

11.    Defendant Gary E. Haroian ("Haroian") served as a member of the board of the Company at all relevant times.  This Defendant may be personally served with process and citation at 31 TAMMER LN, HOPKINTON, MASSACHUSETTS 01748-2600.

12.    Defendant Dr. Paul E. Jacobs ("Jacobs") served as a member of the Company's board of directors at all relevant times.  This Defendant may be personally served with process and citation at 9075 LA JOLLA SHORES LN, LA JOLLA, CA 92037-1516.

13.    Defendant Mark M. Little Ph. D. ("Little") served as a member of the board of directors of the Company at all relevant times.  This Defendant may be personally served with process and citation at 15 EDGEWOOD RD., HARWICH PORT, MASSACHUSETTS 02646-2105.

14.    Defendant Jeff McCarthy ("McCarthy") served as a member of the board of directors of the Company at all relevant times.  This Defendant may be personally served with process and citation at 100 BEACON ST UNIT 7, BOSTON, MASSACHUSETTS 02116-1569.

15.    Defendant Dr. Bart Riley ("Riley") served as a member of the board of directors of the Company at all relevant times.  This Defendant may be personally served with process and citation at his primary place of business, located at 200 WEST STREET, WALTHAM, MASSACHUSETTS

16.     The individuals named as defendants in ¶¶5-15 are sometimes referred to herein as the "Individual Defendants." The defendants named above are collectively referred to as "Individual Defendants." Because of the Individual Defendants' positions with the Company, they had access to key adverse but undisclosed information about the Company's business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and through reports and other information provided to them in connection therewith.

17.     It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of defendants identified above. Each of the above board members of A123, by virtue of his or her high-level position with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, growth, financial statements, and financial condition as these defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

4

18.     As officers and controlling persons of a publicly-held company whose common stock has been, at all relevant times, registered with the U.S. Securities and Exchange Commission ("SEC") under the Exchange Act which is traded on the NASDAQ Stock Exchange, and is governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to promptly disseminate accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded common stock would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions violated these specific requirements and obligations.

19.     The Individual Defendants participated in the drafting, preparation, and/or approval of the various public and shareholder and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with A123, each of the Individual Defendants had access to the adverse undisclosed information about A123's business prospects and financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about A123 and its business issued or adopted by the Company materially false and misleading.

20.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the

Class Period. Further, each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected.  Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and is therefore primarily liable for the representations contained therein.

21.     Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit by disseminating materially false and misleading statements and/or concealing material adverse facts, which has severely damaged A123 and its shareholders by extension.

## SUBSTANTIVE ALLEGATIONS

22.     A123 develops, manufactures and sells advanced lithium-ion batteries and energy storage systems.  In the transportation industry, A123 works with major global automotive manufacturers and tier 1 suppliers to develop batteries and battery systems for hybrid electric vehicles ("HEVs"), plug-in hybrid electric vehicles ("PHEVs"), and electric vehicles ("EVs"). The Company designs and develops batteries and battery systems for BAE Systems ("BAE"), BMW AG ("BMW"), General Motors Company ("GM"), Shanghai Automotive Industry Corp. ("SAIC"), and other customers, for multiple vehicle models.  In January 2010, the Company entered into a supply agreement with Fisker Automotive, Inc. ("Fisker"), where A123 was designated as the supplier of battery systems for Fisker's Karma PHEV programs.

### Defendants' False and Misleading Statements

23.     On February 28, 2011, the Company issued a press release announcing its financial results for the fourth quarter and year ended December 31, 2010.  For the fourth quarter, the Company reported a net loss of $45.7 million, or $0.43 diluted loss per share

("LPS") and revenue of $24 million, as compared to a net loss of $22.3 million, or $.22 diluted LPS and revenue of $24.5 million for the same period a year ago.  For the year, the Company reported a net loss of $152.6 million, or $1.46 diluted LPS and revenue of $97.3 million, as compared to a net loss of $85.8 million, or $2.55 diluted LPS and revenue of $91 million for the same period a year ago.

24.     On March 11, 2011, the Company filed with the SEC an annual report on Form 10-K for the period ended December 31, 2010, which was signed by defendants Vieau and Granara, among others, and reiterated the Company's previously announced financial results and financial position.  Among other things, the Company's Form 10-K represented the following:

> Our cylindrical batteries are in volume production and are commercially available for use in automotive and heavy duty vehicles. Our next Generation prismatic batteries are currently being produced in our Livonia, Michigan facility, which officially opened on September 13, 2010. This 291,000 square foot facility is designed to enable the complete production process, including research and development, manufacturing of high-value components, cell fabrication, module fabrication and the final assembly of complete battery packs ready for vehicle integration.
>
> * * *
>
> AMP20. The APM20 (7.2 mm thick, 161 mm wide, 227 mm in height) is designed for high-power PHEV and EV applications. Our 20Ah building block for PHEV and EV applications is currently in production. This prismatic cell is an advanced high power and long-life lithium-ion energy storage solution for next-generation applications and is being used in the Fisker Karma PHEV, among other applications.
>
> * * *
>
> Our prismatic battery system's design allows for various battery configurations, providing pack design versatility for the automotive market. This design reduces retooling time when reconfiguring our assembly lines for different customers. Our battery systems are highly engineered to incorporate safety and control features that extend life and improve performance. Module-level fusing, temperature sensing and other safety controls provide additional containment safeguards to isolate and protect against cell-level failure. Active overvoltage protection provides monitoring and balancing of individual series elements to protect cells from abuse and to extend life. These battery systems are designed to accommodate either liquid or air-cooled thermal management systems, and have mechanical structures designed to withstand the harsh vibration and mechanical shock environment of automotive applications.

25.     The Form 10-K also included certifications pursuant to the Sarbanes-Oxley Act of

2002 ("SOX"), which were signed by Defendants Vieau and Granara, who certified:

1.      I have reviewed this Annual Report on Form 10-K of A123 Systems, Inc.;

2.      Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.      Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.      The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

(a)     Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

(b)     Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

(c)     Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

(d)     Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's

most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting;

5.  The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

(a)  All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

(b)  Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

26.  On April 1, 2011, the Company announced the pricing of an offering of 18 million shares of common stock at a price of $6.00 per share, and an offering of $125,000,000 principal amount of convertible subordinated notes due 2016.  The net proceeds from the sale of the common stock and the convertible notes were estimated to be approximately $102.7 million and $120.6 million, respectively

27.  On May 9, 2011, the Company issued a press release announcing its financial results for the first quarter ended March 31, 2011.  For the quarter the Company reported a net loss of $54 million, or $0.51 diluted LPS and revenue of $18 million, as compared to a net loss of $29 million, or $0.28 diluted LPS and revenue of $24 million for the same period in the prior year.

28.  On May 10, 2011, the Company filed with the SEC a quarterly report on Form 10-Q for the period ended March 31, 2011.  The Form 10-Q was signed by Defendants Vieau and Granara and reiterated the Company's previously announced quarterly financial results and financial position.  The Form 10-Q also included Sarbanes-Oxley required certifications, which

were signed by Defendants Vieau and Granara and substantially similar to the certifications described in ¶27, *supra*.

29.      On August 4, 2011, the Company issued a press release announcing its financial results for the second quarter ended June 30, 2011.  For the quarter, the Company reported a net loss of $55 million, or $0.44 diluted LPS, and revenue of $36 million, as compared to a net loss of $34 million, or $0.33 diluted LPS and revenue of $23 million for the same period in the prior year.

30.      On August 5, 2011, the Company filed with the SEC a quarterly report on Form 10-Q for the period ended June 30, 2011, which was signed by Defendants Vieau and Prystash and reiterated the Company's previously announced financial results and financial position.  The Company's Form 10-Q also contained Sarbanes-Oxley required certifications, signed by Defendants Vieau and Prystash, substantially similar to the certifications described in ¶27, *supra*.

31.      On November 9, 2011, the Company issued a press release announcing its financial results for the third quarter ended September 30, 2011.  For the quarter, the Company reported a net loss of $64 million, or $0.51 diluted LPS and revenue of $64 million, as compared to a net loss of $44 million, or $0.42 diluted LPS and revenue of $26 million for the same period in the prior year.

32.      On November 9, 2011, the Company filed with the SEC a quarterly report on Form 10-Q for the period ended September 30, 2011.  The Form 10-Q was signed by Defendants Vieau and Prystash and reiterated the Company's previously announced quarterly financial results and financial position.   The Form 10-Q also contained Sarbanes-Oxley required certifications, signed by Defendants Vieau and Prystash, substantially similar to the certifications described in ¶27, *supra*.

33.     On March 8, 2012, the Company issued a press release announcing its financial results for the fourth quarter and year ended December 31, 2011.  For the fourth quarter, the Company reported a net loss of $85 million, or $0.65 diluted LPS and revenue of $40 million, as compared to a net loss of $46 million, or $0.43 diluted LPS and revenue of $24 million for the same period in the prior year.  For the year, the Company reported a net loss of $250 million, or $2.12 diluted LPS and revenue of $159 million, as compared to a net loss of $152.6 million, or $1.46 diluted LPS and revenue of $97.3 million for the same period in the prior year.

34.     On March 12, 2012, the Company filed with the SEC an annual report on Form 10-K for the period ended December 31, 2011.  The Form 10-K was signed by Defendants Vieau and Prystash, among others, and reiterated the Company's previously announced annual financial results and financial position.  Among other things, the Form 10-K represented the following:

> Our cylindrical batteries are in volume production and are commercially available for use in automotive and heavy duty vehicles. Our next generation prismatic batteries are currently being produced in our Livonia, Michigan facility, which officially opened in September, 2010. This 291,000 square foot facility enables the complete production process, including research and development, manufacturing of high-value components, cell fabrication, module fabrication and the final assembly of complete battery packs ready for vehicle integration.
>
> * * *
>
> AMP20. The AMP20 (7.2 mm thick, 161 mm wide, 227 mm in height) is designed for high-power PHEV and EV applications. Our 20Ah building block for PHEV and EV applications is currently in production. This prismatic cell is an advanced high power and long-life lithium-ion energy storage solution for next generation applications and is being used in the majority of our transportation customers and a growing percentage of our grid customers.
>
> * * *
>
> Our prismatic battery system's design allows for various battery configurations, providing pack design versatility for the automotive market. This design reduces retooling time when reconfiguring our assembly lines for different customers. Our battery systems are highly engineered to incorporate safety and control features that extend life and improve performance. Module-level fusing, temperature sensing and other safety controls provide

additional containment safeguards to isolate and protect against cell-level failure. Active overvoltage protection provides monitoring and balancing of individual series elements to protect cells from abuse and to extend life. These battery systems are designed to accommodate either liquid or air-cooled thermal management systems, and have mechanical structures designed to withstand the harsh vibration and mechanical shock environment of automotive applications.

35.    The Company's Form 10-K also contained Sarbanes-Oxley required certifications, signed by Defendants Vieau and Prystash, substantially similar to the certifications described in ¶27, *supra*.

36.    The statements described in ¶¶ 26-38 above, were materially false misleading because they misrepresented or failed to disclose material adverse facts, which defendants knew or recklessly disregarded, including that: (1) the Company had severe manufacturing deficiencies at its Livonia, Michigan manufacturing facility, which produced defective prismatic cells that resulted in premature failure of battery modules and packs; (2) as a result of the defective prismatic cells, A123 would likely be required -- and incur substantial costs -- to recall and replace the affected modules and packs, threatening the financial viability of the Company; and (3) as a result of the foregoing, the Company's statements were materially false and misleading at all relevant times.

## Disclosures

37.    On December 23, 2011, defendant Vieau issued a statement concerning a battery recall involving the Fisker Karma, after determining that some of the battery packs A123 produced for Fisker "could have a potential safety issue relating to the battery cooling system." Vieau further stated:

> Specifically, certain hose clamps that are part of the battery pack's internal cooling system were misaligned, positioned in such a way that could potentially cause a coolant leak. Over time, it is possible that in certain rare circumstances, this coolant leak could potentially lead to an electrical short circuit.

38.     On December 29, 2011, Fisker recalled 239 Karma cars manufactured from July 1, 2011 through November 3, 2011, advising that certain clamps may have been positioned incorrectly during assembly with the high-voltage battery.

39.     On March 8, 2012, Consumer Reports reported that while conducting speedometer calibration runs on its test track with a Fisker Karma, the car's "dashboard flashed a message and sounded a 'bing' showing a major fault."

40.     On March 26, 2012, the Company issued a press release announcing that "the company has launched a field campaign to replace battery modules and packs that may contain defective prismatic cells produced at A123's Livonia, Mich. manufacturing facility."  The press release also disclosed the following, in relevant part:

> A123 has begun building replacement modules and packs and expects to begin shipping them to impacted customers this week. The company anticipates that the cost of replacing the affected customer modules and packs will be approximately $55 million and expects it will be funded over the next several quarters….
>
> "Recently, A123 has discovered that some prismatic cells made in our Livonia facility may contain a defect which can result in premature failure of a battery pack or module that includes a defective cell. We have isolated the root cause of the defective cells and we are confident that we have pinpointed the source of the defect and corrected it. As a result of engineering analysis and testing, we believe this is not a safety issue, and we have determined the root cause and have taken corrective actions," said David Vieau, CEO of A123 Systems. "We are working to get replacement packs and modules to impacted customers as quickly as possible. It is important to note that this defect has been discovered only in some prismatic cells manufactured at our Livonia facility. Prismatic cells produced at another A123 facility are not impacted. Further, the cylindrical cells we make at our facilities in China for a number of other transportation programs, as well as the majority of our grid energy storage systems and commercial applications, are also not affected by this defect."

41.     Later that day, the Company held a conference call during which Defendant Vieau admitted "virtually all of the product that we produced in [the Livonia facility] has been

effectively contaminated by this particular defect." Moreover, Defendant Vieau also disclosed the following, in relevant part:

> A123 has discovered that some battery modules and packs produced with prismatic cells made in Livonia, Michigan manufacturing facility may contain a defect, which can result in premature failure of the battery pack or module, including a decrease in performance and reduced battery life.
>
> * * *
>
> Recently, a small number of battery packs in the field experienced a malfunction and when we inspected these packs to determine the cause, we discovered the existence of this defect. Upon further investigation, we determined that the root cause to be the incorrect calibration of one of four automated tab welding machines in the prismatic cell manufacturing process at our Livonia facility. This caused a misalignment of a certain component in some prismatic cells.
>
> * * *
>
> We have isolated the root cause of the defective cells to this single automated welding machine, and we've recalibrated it to conform with the other automated welding machines at the Livonia facility.
>
> * * *
>
> While we cannot discuss the specific customers that are part of this campaign, there are five transportation customer production programs that have received products from A123 that potentially have defective cells. We are working with these customers to develop a schedule to get them replacement packs and modules to quickly remedy the situation. We have begun building replacement systems and expect to begin shipping them this week.
>
> * * *
>
> So while the initial rapid ramp-up of our Michigan operations to satisfy customer demand has resulted in near-term operational challenges, we are confident in our ability to overcome these issues.

42.    Immediately following this disclosure, Fisker announced "a significant upgrade to the VIP Customer Care Coverage included with the purchase of all 2012 Model Year Karma vehicles.  This new initiative will apply both to existing and future 2012 Model Year Karma customers." Fisker further announced the following, in relevant part:

> Fisker decided to make this enhancement in response to the fact that its high voltage battery supplier, A123 Systems, discovered a latent manufacturing defect in some prismatic cells made in Livonia, Michigan facility that could result in

battery underperformance and decreased durability. As a result, A123 is replacing all impacted battery modules and packs for the Fisker Karma.

* * *

Fisker has been working closely with A123 Systems regarding a high-voltage battery power loss experienced in one of our customer's vehicles, belonging to Consumer Reports. The problem was traced to the A123 battery pack by Fisker's Quality SWAT Team.

43.     Following this news, A123 securities plummeted $0.21 per share, or more than 12%, to close at $1.49 per share on March 26, 2012.

44.     On March 28, 2012, in a note to investors, Deutsche Bank analyst Dan Galves wrote that the $55 million cost to replace the flawed battery packs and modules "represents a severe impact" on the Company's cash reserve, and further stated:

"We no longer have enough confidence that AONE can raise sufficient capital (without massive equity dilution) and/or continue to augment their book of future business. Recent quality issues may lead to concerns over AONE's ability to manufacture with quality at high volumes, potentially leading to customer defections or at least difficulty in procuring new contracts."

45.     As a result of this news, the Company's stock declined an additional $0.18 per share, or nearly 13%, to close at $1.22 per share on March 28, 2012.

## DEFENDANTS' DUTIES

46.     By reason of their positions as officers, directors, and fiduciaries of the Company and because of their ability to control the business and corporate affairs of the Company, Defendants owed the Company and its shareholders fiduciary obligations of good faith, loyalty, and candor, and were and are required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner.  Defendants were and are required to act in furtherance of the best interests of the Company and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. Each director and officer of the Company owes to the Company and its shareholders the fiduciary duty to exercise

15

good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

47.     Defendants, because of their positions of control and authority as directors and officers of the Company, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein. Because of their advisory, executive, managerial, and directorial positions with the Company, each of the Defendants had knowledge of material non-public information regarding the Company.

48.     To discharge their duties, the officers and directors of the Company were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors of the Company were required to, among other things:

a)  exercise good faith to ensure the Company's affairs were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

b)  exercise good faith to ensure the Company operated in a diligent, honest and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority; and

c)  when put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

## DERIVATIVE AND DEMAND EXCUSED ALLEGATIONS

49.     Plaintiff brings this action derivatively in the right and for the benefit of A123 to redress injuries suffered, and to be suffered, by A123 as a direct result of the breaches of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment, as well as the aiding and abetting thereof, by the Individual Defendants. A123 is

named as a nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction in this Court that it would not otherwise have.

50.     Plaintiff will adequately and fairly represent the interests of A123 in enforcing and prosecuting its rights.

51.     Plaintiff is the owner of A123 common stock and was the owner of A123 common stock at all times relevant to the Individual Defendants' wrongful course of conduct alleged herein.

52.     At the time that this action was commenced, the A123 Board was comprised of David P. Vieau, David Prytash, John Granara, Desh Deshpande, Arthur L. Goldstein, Gary E. Haroian, Dr. Paul E. Jacobs, Mark M. Little Ph. D., Jeff McCarthy, and Dr. Bart Riley.

53.     As a result of the facts set forth herein, Plaintiff has not made any demand on the A123 Board to institute this action against the Individual Defendants. Such demand would be a futile and useless act with respect to each and every one of the Individual Defendants because they are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action for the following reasons:

(a)     Defendants face a substantial likelihood of being held liable for breaching their fiduciary duties of loyalty and good faith as alleged herein, and are therefore incapable of disinterestedly and independently considering a demand to commence and vigorously prosecute this action;

(b)     A123's non-employee directors have received, and continue to receive, substantial compensation in the form of cash and stock option awards. These defendants are also interested in maintaining their positions on the Board so as to safeguard their substantial compensation and stock options. The following charts

illustrate the substantial compensation that these directors have received, which demonstrates that demand upon such individuals would be futile:

| Name | Fees Earned or Paid in Cash($) | Stock Awards ($)(1) | Total ($) |
|---|---|---|---|
| Arthur L. Goldstein | 43,000 | 50,200 | 93,200 |
| Gary E. Haroian | 47,500 | 50,200 | 97,700 |
| Gururaj Deshpande | — | 50,200 | 50,200 |
| Paul E. Jacobs | — | 50,200 | 50,200 |
| Mark M. Little | — | — | — |
| Jeffrey P. McCarthy | — | 50,200 | 50,200 |

| Name | Stock Awards (#)(1) | Stock Options (#) |
|---|---|---|
| Arthur L. Goldstein | 10,000 | 125,000 |
| Gary E. Haroian | 10,000 | 125,000 |
| Gururaj Deshpande | 10,000 | — |
| Paul E. Jacobs | 10,000 | — |
| Mark M. Little | — | — |
| Jeffrey P. McCarthy | 10,000 | — |

(c)     The entire A123 Board and senior management participated in the wrongs complained of herein.  For the reasons described herein, A123's directors are not disinterested or independent.  Pursuant to their specific duties as Board members, each was charged with the management of the Company and the conduct of its business affairs.  Each of the above referenced defendants breached the fiduciary duties they owed to A123 and its shareholders in that they failed to prevent and correct the dissemination of the Company false and misleading statements.  Thus, the A123 Board cannot exercise independent objective judgment in deciding whether to bring this action or whether to vigorously prosecute this action because its members are interested personally in the outcome because their actions have subjected A123 to millions of dollars in potential liability for violations of applicable securities laws;

(d)     Defendants David P. Vieau and David Prystash certified certain of A123's SEC filings.  Accordingly, demand is futile as he faces a substantial likelihood of liability for breach of fiduciary duties owed to A123;

(e)      Defendants David P. Vieau and David Prystash were aware of the Company's ongoing unlawful and improper business practices and the dissemination of materially false and misleading statements.

(f)      Defendants Haroian, Goldstein, and McCarthy served on A123's Audit Committee during the Relevant Period.  Defendant Haroian was the chairman of A123's Audit Committee during the Relevant Period.  The stated purpose of A123's Audit Committee was to assist the Board's oversight of the Company's accounting and financial reporting processes and the audits of the Company's financial statements.  Specifically, the Audit Committee was to assist the Board in: (1) identifying and recommending to the Board individuals qualified to become members of our Board and to fill vacant Board positions; (2) recommending to the Board the director nominees for the next annual meeting of shareholders; (3) recommending to the Board director committee assignments; (4) recommending to the Board the compensation for Company directors; (5) reviewing and evaluating succession planning for our Chief Executive Officer and other executive officers; (6) monitoring the continuing education program for our directors; and (7) evaluating annually the Nominations and Corporate Governance Committee charter.  The Audit Committee, moreover, is responsible for oversight of the Company's financial reporting process, including the effectiveness of the Company's internal accounting and financial controls and procedures, and controls over the accounting, auditing, and financial reporting practices. Additionally, the Audit Committee met privately, outside the presence of A123's management, with the Company's independent registered public accounting firm to discuss, among other matters, all communications required by standards of the Public Company Accounting Oversight Board, including the matters required to be discussed by PCAOB AU 380, *Communication with Audit Committees*, and Rule 2-07, *Communication with Audit Committees*,

of Regulation S-X.  As part of its oversight role with respect to the Company's financial statements and the public disclosure of the Company's financial results, moreover, the Company's Audit Committee regularly reviewed and discussed with A123's management the financial statements included in the Company's annual reports on Form 10-K and quarterly reports on Form 10-Q, its quarterly earnings releases, and the financial guidance that the Company provided to analysts, ratings agencies, and the public.  The Audit Committee also met regularly in separate executive sessions with A123's CFO, Chief Accounting Officer, and other members of the Company's executive management team. As a result, Defendants Haroian, Goldstein, and McCarthy knew, or should have known, of the Company's wrongdoing alleged herein, but intentionally or recklessly violated their duties as members of the Audit Committee. Specifically, because of these duties and responsibilities – particularly the Audit Committee's responsibility to discuss the Company's financial information and earnings guidance with A123's management prior to release – members of the Audit Committee were aware that A123's positive statements about the Company's prospects and growth were made without a reasonable basis.  Indeed, through such discussions with A123's management, the Audit Committee was aware or should have been aware of the significant deficiency in the prismatic cells made in the Livonia facility, which may contain a defect that can result in premature failure of a battery pack or module that includes a defective cell. Further, the Audit Committee was aware or should have been aware that these processes lacked effective supervision and oversight and the Company's operating efficiencies had been hindered.  As such, Defendants breached their fiduciary duties of loyalty and good faith to the Company.  Additionally, the failure of the Individual Defendants to perform their duties as members of the Audit Committee with loyalty and in good faith raises a substantial likelihood of non-exculpated personal liability on their part.  As a result, the

Individual Defendants cannot impartially consider a demand on the Board to commence litigation against themselves;

(g)     Each of the key officers and directors knew of and/or directly benefited from the wrongdoing complained of herein thereby rendering demand futile;

(h)     The Individual Defendants approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs and/or negligently disregarded the wrongs complained of herein, and are therefore not disinterested parties;

(i)     In order to bring this suit, all of A123's directors would be forced to sue themselves and persons with whom they have extensive business and personal entanglements, which they will not do, thereby excusing demand;

(j)     The acts complained of constitute violations of the fiduciary duties owed by A123's officers and directors and these acts are incapable of ratification;

(k)     Each of the Individual Defendants authorized and/or permitted the false statements disseminated directly to the public and which were made available and distributed to shareholders, authorized and/or permitted the issuance of various of the false and misleading statements and are principal beneficiaries of the wrongdoing alleged herein, and thus could not fairly and fully prosecute such a suit even if they instituted it;

(l)     Any suit by the Company's current directors to remedy these wrongs would likely expose the Individual Defendants and A123 to further violations of the securities laws that would result in civil actions being filed against one or more of the Individual Defendants, thus, they are hopelessly conflicted in making any supposedly independent determination whether to sue themselves;

(m)     A123 has been, and will continue to be, exposed to significant losses due to the wrongdoing complained of herein, yet the Individual Defendants have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for A123 any part of the damages A123 suffered and will suffer thereby; and

(n)     If the current directors were to bring this derivative action against themselves, they would thereby expose their own misconduct, which underlies allegations against them contained in a class action complaint for violations of securities law, which admissions would impair their defense of the class action and greatly increase the probability of their personal liability in the class action, in an amount likely to be in excess of any insurance coverage available to the Individual Defendants.  Thus, the Individual Defendants would be forced to take positions contrary to the defenses they will likely assert in the securities class action.

(o)     Moreover, despite the Individual Defendants having knowledge of the claims and causes of action raised by Plaintiff, the current Board has failed and refused to seek to recover for A123 for any of the wrongdoing alleged by plaintiff herein.

(p)     Plaintiff, moreover, has not made any demand on shareholders of A123 to institute this action since demand would be a futile and useless act for the following reasons:

   1.     A123 is a publicly held company with over 146.9 million shares outstanding, and thousands of shareholders;

   2.     Making demand on such a number of shareholders would be impossible for Plaintiff who has no way of finding out the names, addresses of phone numbers of shareholders; and

   3.     Making demand on all shareholders would force plaintiff to incur huge expenses, assuming all shareholders could be individually identified.

(q)     Furthermore, the conduct complained of herein could not have been the product of good faith business judgment, and each of these directors faces a substantial likelihood of liability for breaching their fiduciary duties because, through their intentional misconduct, they

have subjected A123 to substantial damages.   Furthermore, the conduct of the Individual

Defendants has subjected the Company to potential liability in connection with a securities fraud

class action entitled *FIKE v. A123 SYSTEMS, INC. et al*, *cause number 1:12-cv-10657-RGS,*

pending in the United States District Court for the District of Massachusetts.   Through their

intentional misconduct, Individual Defendants have subjected the Company to potential costs,

fines, and judgments associated with the securities class action.   Such actions by the Individual

Defendants cannot be protected by the business judgment rule.   Accordingly, making a pre-suit

demand on the Individual Defendants would be futile.

54.     Based on the foregoing, Plaintiff brings the following claims.

**COUNT I**
**(AGAINST THE INDIVIDUAL DEFENDANTS FOR BREACH OF FIDUCIARY DUTY)**

55.     Plaintiff incorporates by reference each of the preceding paragraphs as though

they were set forth in full herein.

56.     Defendants owed a fiduciary duty to A123 to supervise the issuance of the

Company's press releases and public filings to ensure that they were truthful and accurate and

they such filings conformed to applicable securities laws.   Defendants, however, breached their

fiduciary duties by failing to properly supervise and monitor the adequacy of A123's internal

controls and by allowing the Company to issue and disseminate misleading statements and

filings.

57.     Defendants have engaged in a sustained and systematic failure to exercise their

oversight responsibilities and to ensure that A123 complied with applicable laws, rules and

regulations.

58.     As members of the A123 Board, the Individual Defendants were directly

responsible for authorizing, permitting the authorization of, or failing to monitor the practices

that resulted in violations of applicable laws as alleged herein.  Each of them had knowledge of and actively participated in, approved, and/or acquiesced in the wrongdoing alleged herein or abdicated his or her responsibilities with respect to this wrongdoing.  The alleged acts of wrongdoing have subjected the Company to unreasonable risks of loss and expenses.

59.     Each of defendants' acts in causing or permitting the Company to disseminate material misrepresentations and omissions to the investing public and abdicating his or her oversight responsibilities to the Company have subjected the Company to liability for violations of applicable laws, and therefore were not the product of a valid exercise of business judgment, constituting a complete abdication of their duties as officers and/or directors of the Company.  As a result of defendants' breaches, A123 is the subject of a major securities fraud class action lawsuit by defrauded investors, and the Company's reputation in the business community and financial markets has been irreparably tarnished.

## COUNT II
## (AGAINST THE INDIVIDUAL DEFENDANTS FOR GROSS MISMANGEMENT)

60.     Plaintiff incorporates by reference each of the preceding paragraphs as though they were set forth in full herein.

61.     Defendants had a duty to A123 and its shareholders to prudently supervise, manage, and control the operations, business, and internal financial accounting and disclosures of the Company.  Defendants, however, by their actions and by engaging in the wrongdoing alleged herein, abandoned and abdicated their responsibilities and duties with regard to prudently managing the business of A123 in a manner consistent with the duties imposed upon them by law.  By committing the misconduct alleged herein, defendants breached their duties of due care, diligence, and candor in the management and administration of A123's affairs and in the use and preservation of the Company's assets.

62.     During the course of the discharge of their duties, defendants were aware of the unreasonable risks and losses associated with their misconduct.  Nevertheless, defendants caused A123 to engage in the scheme described herein which they knew had an unreasonable risk of damage to the Company, thus breaching their duties to the Company.  As a result, defendants grossly mismanaged A123, thereby causing damage to the Company.

**COUNT III**
**(AGAINST THE INDIVIDUAL DEFENDANTS FOR CONTRIBUTION AND INDEMIFICATION)**

63.     Plaintiff incorporates by reference each of the preceding paragraphs as though they were set forth in full herein.

64.     A123 is alleged to be liable to various persons, entities and/or classes by virtue of the facts alleged herein that give rise to defendants' liability to the Company.

65.     A123's alleged liability on account of the wrongful acts, practices, and related misconduct alleged arises, in whole or in part, from the knowing, reckless, disloyal and/or bad faith acts or omissions of defendants, and the Company is entitled to contribution and indemnification from each defendant in connection with all such claims that have been, are, or may in the future be asserted against A123, by virtue of the Individual Defendants' misconduct.

**COUNT IV**
**(AGAINST THE INDIVIDUAL DEFENDANTS FOR ABUSE OF CONTROL)**

66.     Plaintiff incorporates by reference each of the preceding paragraphs as though they were set forth in full herein.

67.     The Individual Defendants' conduct, as alleged herein, constituted an abuse of their control over A123.

68.     As a direct and proximate result of the Individual Defendants' abuse of control, the Company has suffered, and will continue to suffer, damages for which the Individual Defendants are liable.  Plaintiff, moreover, has no adequate remedy at law.

### COUNT V
### (AGAINST THE INDIVIDUAL DEFENDANTS FOR WASTE OF CORPORATE ASSETS)

69.     Plaintiff incorporates by reference each of the preceding paragraphs as though they were set forth in full herein.

70.     The Individual Defendants' conduct, as alleged herein, constituted a waste of the corporate assets of A123.

71.     As a direct and proximate result of the Individual Defendants' abuse of control, the Company has suffered, and will continue to suffer, damages for which the Individual Defendants are liable.  Plaintiff, moreover, has no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

i.      Against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties;

ii.     Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

iii.    Granting such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:  May 14, 2012                LAW OFFICES OF MICHAEL F. GERMANO

By:   /s/ Michael F. Germano
Michael F. Germano (BBO #567117)
63 Atlantic Avenue, 3d Floor
Boston, Massachusetts 02110
Telephone:      (617) 367-5911
Facsimile:      (617) 227-3384

THE BRISCOE LAW FIRM, PLLC
Willie C. Briscoe
The Preston Commons
8117 Preston Road, Suite 300
Dallas, Texas 75225
Telephone: (214) 706-9314

POWERS TAYLOR
Patrick Powers
Mark Taylor
Peyton Healey
Campbell Centre II
8150 North Central Expy.,
Suite 1575
Dallas, Texas 75206

*Attorneys for Plaintiff*